**THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Taylor D. Pendleton,<br><br>Plaintiff,<br><br>v.<br><br>10Q LLC et al.,<br><br>Defendants. | Case No. 1:23-cv-04708<br><br>Dist. Judge Andrea R. Wood<br><br>Mag. Judge M. David Weisman |

**DEFENDANTS PROPELR MUSIC, LLC AND MARRIANI, INC.'S REPLY IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT**

## ARGUMENT

Defendants Propelr Music, LLC ("Propelr") and Marriani, Inc. ("Marriani"), by their counsel, respectfully submit this reply in support of their Motion to Set Aside Entry of Default (Dkt. 30) ("Motion to Set Aside"). Plaintiff Taylor D. Pendleton ("Plaintiff" or "Pendleton") has submitted a response (Dkt. 37) to the Motion to Set Aside, arguing that Propelr and Marriani have failed to support the three necessary elements for vacating default: (1) good cause; (2) quick action to correct default; and (3) existence of meritorious defenses. Plaintiff is mistaken with respect to all three elements, and the Court should set aside its prior entry of default against Propelr and Marriani.

### I. Good Cause Exists for Propelr and Marriani's Default.

Plaintiff chastises Propelr and Marriani for not "seek[ing] the mercy of this Court" and not "tak[ing] responsibility and/or accountability" for the entry of default. (Dkt. 37 at 7.) As Propelr and Marriani have already explained, however, they do not need a "good excuse" or "excusable neglect" to meet the "good cause" standard for setting aside the default. (Dkt. 30 at 4.) For the sake of argument, even if Propelr and Marriani are deemed to have been negligent or reckless in allowing for default to occur, this does not preclude a showing of good cause for setting aside a default. (Id.) The existence of multiple ongoing cases also has explicitly been found in this District as a source of good cause, even when the presiding judge suspected that defendants had tried to evade service. (Id.) In fact, the only thing that Propelr and Marriani need to convey for good cause to be established is that they did not respond due to inadvertence rather than willful ignorance. (Id. (citing Fed. Trade Comm'n v. Construct Data Publishers A.S., No. 13-cv-013999, at *10 (N.D. Ill. Dec. 11, 2014) (WOOD, J.).)

Plaintiff accuses Propelr and Marriani of misrepresenting the circumstances regarding Plaintiff's lack of attempts to serve Propelr and Marriani through prior counsel with whom Plaintiff already had prior contact. (Dkt. 37 at 7.) Plaintiff's counsel blames Defendants for creating an "arduous process" for service. (Id.) Despite this indignation, the multitude of documents filed by the

parties in relation to this Motion to Set Aside convey several points, making clear that Plaintiff has no one to blame on the Defendants' side.

**First**, Plaintiff had previously communicated with Adam Farag ("Farag") – also an attorney now appearing on behalf of Defendants in this case. (Dkt. 37 at 3.) Farag had agreed to accept service in Plaintiff's prior case against Defendants in California ("California Action") without issue. (See Dkt. 37-4, Dkt. 37-5.) Plaintiff makes no mention in her response of any attempts to communicate with Farag about the Illinois case. Plaintiff's counsel seemingly did not attempt to contact Farag about acceptance of service of process in Illinois, despite having previously been in touch with Farag specifically for the purpose of serving process. (See Declaration of Adam J. Farag, ¶ 4.)

**Second**, Plaintiff's response mentions oral discussions with Defendants' California attorneys about "Plaintiff's ***intent to file*** this action." (Dkt. 37 at 8; Dkt. 37-1 ¶ 15 (emphasis added).) In other words, ***before filing this case***, Plaintiff's counsel verbally brought up the ***potential*** of filing an action in Illinois, and Defendants' California counsel – not yet having discussed the matter with their clients – informed Plaintiff's counsel that they did not have authority to accept service. Plaintiff's counsel seemingly equated (i) Defendants' California attorneys' lack of on-the-spot commitment to accept service in some hypothetical case with (ii) "Propelr and Marriani advis[ing California counsel] ***not*** to accept service on their behalf." (Dkt. 37 at 7–8 (emphasis in original).) Notably, Plaintiff does not reference any communications with California counsel regarding service of process ***after actually filing this case***, because no such communications occurred.

**Third**, Plaintiff seeks to equate Brian Troglia ("Troglia") with Josh Kaplan ("Kaplan"). (See Dkt. 37 at 4–5, 7–8.) It is undisputed that at all times Kaplan individually was listed as the registered agent of both Propelr and Marriani. (Dkt. 30-2 ¶ 4; Dkt. 37-9, Dkt. 37-10.) It is also undisputed that Plaintiff's process server delivered the summons and complaint in this case to Troglia. (Dkt. 30-3 ¶ 4; Dkt. 37-12, Dkt. 37-13.) True, Kaplan and Troglia were formerly business partners in the law firm

Troglia Kaplan, LLC ("TK") whose office is at the same address as the registered address. (Dkt. 30-2 ¶ 5.) As Kaplan has attested, and as Plaintiff's own submitted evidence reinforces, Kaplan has been in an Of Counsel role with TK since February 2023. (Id. ¶ 7; Dkt. 37-7.) The continued use of Kaplan's name in TK's marketing may have initially made it reasonable for Plaintiff to assume that TK could accept service on behalf of companies for whom Kaplan was a registered agent, but at multiple stages, Plaintiff should have abandoned that assumption. In early August 2023, Plaintiff's process server provided a certificate of non-service, stating that TK's "office assistant said they are not the Registered Agent for Marriani Records." (Dkt. 37-8.) Then, after Troglia was served, Troglia emailed Plaintiff's counsel informing her of the fact that Troglia was neither the registered agent nor in any other way represented Propelr or Marriani. (Dkt. 30-3 ¶ 8; Dkt. 30-4.) Troglia did not hear back from Plaintiff's counsel, and Plaintiff makes no mention of any subsequent communications with Troglia about the issue. (Dkt. 30-3 ¶ 9.) Instead, four weeks later, Plaintiff moved for entry of default. (Dkt. 37 at 9.)

**Fourth**, Plaintiff's counsel apparently never sought to contact Kaplan directly via email about the Illinois case. (See Dkt. 30-2 ¶ 10.) Same as with Farag, Plaintiff's counsel had Kaplan's email address from prior correspondences relating to the California Action. (See Dkt 37 at 3; Dkt. 37-3.) Service of process in relation to the California Action had been seamless via email, and Kaplan did not in any way indicate an aversion to acceptance of service via email. Rather than simply send an email to Kaplan – knowing full well that he was an attorney and therefore could be contacted directly by Plaintiff's counsel – Plaintiff's counsel instead wasted time and resources trying to serve Kaplan in-person, ultimately failing to do so anyway.

At every step of the way, Plaintiff and her counsel seemingly elected to take the less effective, more difficult approach, and still failed to properly effect service in compliance with Rule 4(h) of the

Federal Rules of Civil Procedure.[1] Even if it could somehow be argued that Kaplan was negligent or reckless in failing to monitor the registered address consistently for potential service of process of Propelr and Marriani, such conduct still would not be sufficient to avoid a showing of good cause for purposes of setting aside the default order. (See Dkt. 30 at 4.) The willful ignorance standard cannot be met. (See id.) Why would Propelr and Marriani have spent significant resources defending against Plaintiff's claims in a foreign jurisdiction only to willfully abandon their defense in Illinois? Propelr and Marriani have shown that good cause exists to set aside the default.

## II. Propelr and Marriani Have Taken Quick Action to Correct Their Default.

Despite not actually serving Propelr and Marriani's registered agent at any point, Plaintiff argues that Propelr and Marriani were not sufficiently quick in seeking to vacate the default. (Dkt. 37 at 8.) Plaintiff's arguments in relation to Defendants' promptness do not actually treat timeliness as an element separate from a finding of good cause. Pendleton cites case law where a delay of 9-10 weeks was found to be sufficiently quick when there was also good cause. (See Dkt. 37 at 9.) She then proceeds to distinguish that case law by stating that Propelr and Marriani have not provided good cause. It would be impossible to find a case in which a court vacated a default order without good cause, because good cause must exist regardless of how quickly a party acted. At the same time, ***Plaintiff has not cited any case in which a court found that good cause existed but in which defaulting parties failed to act sufficiently quickly***. The bottom line is that Plaintiff seemingly arrives at exactly the same standard presented by Propelr and Marriani in their Motion to Set Aside – i.e., that the promptness of correcting a default is assessed on a case-by-case basis. (See Dkt. 30 at 5.)

[1] Though Propelr and Marriani do not believe that Plaintiff complied with Rule 4(h) in serving either Propelr or Marriani, they are not interested in trying to dismiss this case for insufficient process. They did not file a Rule 12(b)(4) motion, and they did not seek to advance that argument in the Motion to Set Aside. The questions around the efficacy of service, however, are the basis for why there is good cause to vacate the default order. Now that Propelr and Marriani are aware of the status of this litigation, they simply seek to litigate it on the merits, as evidenced through their filing of the motion to dismiss under Rule 12(b)(6). (Dkt. 31.)

As for the circumstances relevant here, it is important to emphasize that Marriani and Propelr do not share any common ownership or management. (See Dkt. 28; Dkt. 29; Dkt. 30-2 ¶¶ 3, 9.) With respect to Marriani specifically, Defendant Antoine Reed ("Reed") is the sole owner and officer. (Dkt. 29.) Any questions regarding validity of service notwithstanding, Kaplan has already attested that Reed had no knowledge of this litigation because, despite Kaplan's status as Marriani's registered agent, Kaplan did not provide Reed with notice of this case. (See Dkt. 30-2 ¶¶ 9, 12.) Reed found out about this litigation when he was served in his individual capacity on June 10, 2024. Ergo, that is the earliest date at which the sole owner and officer of Marriani could have found out about this lawsuit or any potential default entered against Marriani. Reed did not seek any extensions in responding to the Complaint after being served, and the Motion to Set Aside was filed on behalf of Marriani less than three weeks after Marriani's sole decisionmaker learned of the default. Therefore, Marriani acted sufficiently quickly to set aside the default.

Meanwhile, Kaplan is the sole person in charge of Propelr. (Dkt. 28; Dkt. 30-2 ¶¶ 3–4.) In support of the Motion to Set Aside, Kaplan provided context for why he was not present at the registered address at the time of service. (See Dkt. 30-2 ¶¶ 7–8.) Regardless of any sophistication that may be imputed upon Kaplan solely from his status as a licensed attorney, there is no question that Kaplan was not the person served with process. (See discussion supra Part I.) Kaplan did not find out about the entry of default until Reed reached out after getting served.

Plaintiff also seemingly implies that the 12-week delay between the entry of default and the filing of the Motion to Set Aside prejudiced Plaintiff. (See Dkt. 37 at 9 (emphasizing case language regarding prejudice).) Plaintiff does not explain, however, how she may have been prejudiced by the delay. (See id.) This absence of arguments is sufficient to dispose of any concerns about prejudice. See Smith v. Widman Trucking Excavating, 627 F.2d 792, 798 (7th Cir. 1980). Either way, prejudice cannot stem from a defaulted defendant's subsequent success on the merits. See id. at 798 n.7.

As discussed in the Motion to Set Aside and in more detail below, Propelr and Marriani have at least three meritorious defenses to the Complaint. Though the res judicata defense became available only in March 2024 when the Ninth Circuit dismissed Plaintiff's appeal for want of prosecution, that still occurred prior to the entry of default on April 3, 2024. More importantly, the other two asserted defenses – failure to state a copyright infringement claim and preemption – would have been available to Propelr and Marriani at all points after Plaintiff's filing of her Complaint. Therefore, Plaintiff will not be in any way unfairly harmed by addressing the asserted defenses now rather than at an earlier date, prior to the entry of default.

**III. Propelr and Marriani Have Meritorious Defenses to the Complaint.**

Plaintiff argues that Propelr and Marriani do not have "standing to contest the truth of the facts alleged in the complaint" and that "the well-pleaded allegations of a complaint relating to liability are taken as true." (Dkt. 37 at 11.) She claims that this nullifies Propelr and Marriani's filing of the motion to dismiss. (See id.) As Propelr and Marriani stated in their Motion to Set Aside, however, the Seventh Circuit does not view entry of a default as precluding a party from challenging the sufficiency of the complaint. (See Dkt. 30 at 6 (quoting Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994).) That is exactly what a motion to dismiss does – challenge the sufficiency of the complaint. This makes perfect sense because, consistent with the standard for Rule 12(b)(6) motions, the Defendants' pending motion to dismiss ***presumes the truth of the well-pleaded allegations in Plaintiff's Complaint***. Therefore, the entry of default against Propelr and Marriani does not in any way contradict their right to argue that the case should be dismissed due to the various meritorious defenses.

As Propelr and Marriani have stated, setting aside default does not require defaulted defendants to prove that their defenses ultimately would be successful – only that at least one defense "raises a serious question regarding the propriety of a default judgment and which is supported by a

developed legal and factual basis." (Dkt. 30 at 6 (quoting Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994).) At the Court's instruction, in the discussion below, Propelr and Marriani expand on their minimum of three meritorious defenses of (i) res judicata, (ii) failure to state a claim for copyright infringement, and (iii) preemption of state-law claims. The pending motion to dismiss naturally goes into even further detail.

**a. Serious Questions Exist as to Whether Pendleton's Claims Are Precluded by the Doctrine of Res Judicata.**

"Res judicata, or claim preclusion, bars any claims that were litigated or could have been litigated in a previous action when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." Bell v. Taylor, 827 F.3d 699, 706 (7th Cir. 2016) (internal quotation marks omitted). As an initial matter, Pendleton has already admitted that she filed the California Action against the Defendants "based upon the same claims and causes of action in this Complaint." (Compl. ¶ 45; see also, Dkt. 37 at 2–3.) There has now also been a final judgment on the merits in the California Action. Specifically, while the initial dismissal of the California Action against Defendants was on jurisdictional grounds, Pendleton's appeal was subsequently dismissed for want of prosecution. See California Action, Dkt. 67.

In the Ninth Circuit, a dismissal for failure to prosecute "operates as an adjudication upon the merits," unless the dismissal specifies otherwise. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 714 (9th Cir. 2001) (quoting FED. R. CIV. P. 41(b)). The same is true in the Seventh Circuit. Barr v. Bd. of Trs. of W. Ill. Univ., 796 F.3d 837, 838 (7th Cir. 2015); see also, Tartt v. Nw. Cmty. Hosp., 453 F.3d 817, 822 (7th Cir. 2006) (holding that dismissal under Rule 41(b) for failure to prosecute "amounts to a final judgment on the merits for res judicata purposes"). Because the California Action was dismissed for failure to prosecute without any additional statement that the dismissal somehow did not serve as a final judgment, the third requirement of res judicata is also satisfied. At a minimum, such circumstances raise serious questions as to whether it would be appropriate to grant default

judgment in this case, thereby meeting Propelr and Marriani's obligations to show that a meritorious defense exists.

**b. Serious Questions Exist as to Whether Pendleton Has Sufficiently Pleaded Her Copyright Infringement Claim Against Propelr and Marriani.**

As yet another meritorious defense for Propelr and Marriani, Plaintiff has failed to sufficiently plead her copyright infringement claim. For pleading purposes, "[i]t is well settled that in order to state a claim of copyright infringement, a complaint need allege only ownership, registration, and infringement." Symbria, Inc. v. Callen, 20-cv-4084, at *1 (N.D. Ill. Jan. 6, 2022) (ROWLAND, J.) (quoting Sweet v. City of Chicago, 953 F.Supp. 225, 227 (N.D. Ill. 1996)).

In the motion to dismiss, Defendants address multiple deficiencies in Pendleton's Complaint. For purposes of conveying that serious questions exist about the merits of Plaintiff's claims, it is sufficient to note that Pendleton does not allege that she registered the copyright to the Artwork. Pleading the existence of a copyright registration is crucial in light of the Supreme Court's determination that, subject to certain carve-outs inapplicable here, Section 411(a) of the Copyright Act requires for a registration to be approved and issued before a copyright owner can sue for infringement. See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, 139 S. Ct. 881, 887 (2019) ("[A]lthough an owner's rights exist apart from registration, registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights.") (internal citation omitted). "If a complaint for copyright infringement fails to include an allegation that the plaintiff registered the copyright, then the complaint must be dismissed." Morton v. Gaines, 2:23-cv-00243-CDS-NJK, at *3 (D. Nev. Apr. 4, 2023). The Complaint contains no mention whatsoever of any act of application for registration. No reference is made to any copyright registration certificate number, and Pendleton does not attach any copyright registration certificate to the Complaint. Such pleading deficiencies create an additional meritorious defense for Propelr and Marriani.

**c. Serious Questions Exist as to Whether Pendleton's Negligence and Unjust Enrichment Claims Are Preempted by the Copyright Act.**

In addition to the copyright infringement claim, Pendleton has alleged that Propelr and Marriani are liable to her for negligence and unjust enrichment. Serious questions exist as to whether these state law causes of action are preempted by copyright laws. Section 301(a) of the Copyright Act sets forth the circumstances under which the Copyright Act preempts state law claims. 17 U.S.C. § 301(a). The Copyright Act preempts a state law right when the state law right (1) concerns a work protectable by copyright and (2) is equivalent to any of the exclusive rights of copyright owners under Section 106 of the Copyright Act. Carter v. Pallante, 256 F. Supp. 3d 791, 802 (N.D. Ill. 2017) (LEE, J.).

Assuming that the Artwork is indeed subject to copyright protection – a position that Pendleton seemingly espouses given that the Complaint includes claims for copyright infringement – the preemption analysis for all of Pendleton's state law claims would hinge on the second element. "A state law right is considered 'equivalent' under the second prong if it is 'infringed by the mere act of reproduction, performance, distribution or display.'" Id. (quoting Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 677 (7th Cir. 1986)). Just because a state law claim involves elements beyond those necessary to prove copyright infringement, preemption is still appropriate "if 'the additional elements do not differ in kind from those necessary for copyright infringement.'" Carter, 256 F. Supp. 3d at 803 (quoting Baltimore Orioles, 805 F.2d at 677 n.26).

Plaintiff's negligence claim against Propelr and Marriani is based, in effect, on the premise that they "breached the duty of care [ ] owed to the plaintiff by infringing on the plaintiff's intellectual property." UIRC-GSA Holdings Inc. v. William Blair & Co., No. 15-CV-9518, at *12 (N.D. Ill. Aug. 21, 2017) (ST. EVE, J.). Plaintiff's allegations in the Complaint explicitly mention Propelr and Marriani's violation of Pendleton's rights ***to distribute and create derivative works of the Artwork***. (Compl. ¶¶ 69–70.) Such framing results in a preemption of a negligence claim by the Copyright Act.

The unjust enrichment claim against Propelr and Marriani will meet a similar fate. In the absence of an agreement, a defendant's unauthorized use of creative works without payment of royalties or licensing fees "is precisely what is proscribed by the Copyright Act." Carter, 256 F. Supp. 3d at 804. Similarly, the loss of control over how a particular creative work is distributed is not "qualitatively different" from the rights protected by copyright law. Id.

In the Complaint, Plaintiff alleges that Propelr and Marriani were unjustly enriched because they received money and financial gain due, in part, to the unauthorized use and distribution of the Artwork. (Compl. ¶¶ 76–78, 80.) They allegedly used the Artwork to promote Reed's album on social media and online. (Compl. ¶ 75.) These allegations effectively involve violation of reproduction, distribution, and display rights, which in turn constitutes copyright infringement. See 17 U.S.C. §§ 106(1), (3), (5); Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs., 983 F. Supp. 1167, 1172 (N.D. Ill. 1997). The alleged unjust enrichment does not qualitatively differ from the alleged deprivation of rights due to copyright infringement. Pendleton alleges she suffered the same deprivation in Count I for copyright infringement because Propelr and Marriani supposedly unjustly received money (i.e., the benefit) from the infringing use of Pendleton's work. (Compl. ¶¶ 61, 63.) The effectively identical nature of these two claims supports preemption.

**CONCLUSION**

Propelr and Marriani have successfully met the Rule 55(c) standard for vacating the entry of default. They have shown that good cause exists to set aside the default, that they took quick action to correct the default, and that they have meritorious defenses. Propelr and Marriani respectfully request that the Court vacate the entry of default against them.

Dated: September 19, 2024

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: /s/ Ilya G. Zlatkin
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

**AJ FARAG LAW LLC**

By: /s/ Adam J. Farag
Adam J. Farag
AJ FARAG LAW LLC
1525 North Elston Avenue, Suite 200
Chicago, Illinois 60642
Tel: (815) 262-1486
adam@ajflaw.com

Attorneys for Defendants Propelr Music, LLC and Marriani, Inc.