**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAYLOR D. PENDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-04708 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| 10Q LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Taylor Pendleton, a freelance visual artist, created and shared some artwork with Defendant Antoine Reed, a musical artist known professionally as Sir Michael Rocks. According to Pendleton, four years after their interaction, she discovered that an image she had created and shared with Reed was being used as the album artwork for one of his albums. Upon learning of the artwork's use and finding the explanations provided by Defendants 10Q LLC ("10Q"), Propelr Music, LLC ("Propelr"), and Marriani Records ("Marriani") (collectively, "Record Label") lacking, Pendleton sued Reed, the Record Label, and multiple unnamed defendants. She initially brought suit in the United States District Court for the Central District of California, alleging copyright infringement and other common law violations. But that case was dismissed for lack of personal jurisdiction. Pendleton then filed her Complaint in this Court. Defendants Reed, Marriani, and Propelr ("Moving Defendants") now move to dismiss the Complaint based on the doctrine of *res judicata* and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 31.) For the reasons discussed below, the motion is granted in part and denied in part.

**BACKGROUND**

For purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts in the Complaint and views those facts in the light most favorable to Pendleton as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Pendleton's Complaint alleges as follows.

In May 2016, Pendleton, a freelance artist, shared some of her artwork with Reed on Twitter. (Compl. ¶ 11, Dkt. No. 1.) She did so with the hope that she and Reed could work together in the future. (*Id.*) Reed communicated that he was interested in Pendleton's work and gave her his email address to continue the conversation. (*Id.* ¶ 12.)

Reed and Pendleton picked up their exchange over email, and, on June 15, 2016, Reed told her that he planned to release a mixtape and wanted Pendleton to create the cover art. (*Id.* ¶ 15.) That same day, Pendleton responded that she was interested in doing so. (*Id.* ¶ 16.) The mixtape, Reed explained, would be titled "Funds and Access." (*Id.* ¶ 17.) He also shared a rough concept of what he envisioned for the cover art, explaining that he wanted the album cover to be in the same artistic style as Pendleton's prior work. (*Id.*) Reed and Pendleton continued to exchange emails and, on June 23, 2016, Pendleton sent Reed detailed drafts of the artwork based on Reed's conceptual guidance. (*Id.* ¶ 22.) She communicated to Reed that the drafts were not intended to be final. (*Id.*) That same day, Reed responded and complimented the draft artwork. (*Id.* ¶ 23.) Pendleton soon replied to thank Reed for his compliment and stated that she would help him narrow down a final choice from the multiple drafts she had created. (*Id.* ¶ 24.) But Reed never replied to Pendleton's email. (*Id.* ¶ 25.)

Over four years later, Pendleton was listening to music on Spotify when she stumbled across one of the images that she had created and shared with Reed. (*Id.* ¶ 27.) The image

("Album Artwork") was the thumbnail album cover for a song on Reed's mixtape, Funds and Access. (*Id.*) Later the same day, August 31, 2020, Pendleton emailed Reed to remind him who she was and to tell him that she saw the Album Artwork featured on multiple streaming platforms. (*Id.* ¶ 28.) In the same email, Pendleton stated her desire to settle the matter amicably. (*Id.*) Reed did not respond to the August 31, 2020, email. (*Id.* ¶ 29.) Pendleton then tracked down a different email address for Reed and sent him a second email on September 3, 2020. (*Id.*) Reed did respond to the second email. (*Id.* ¶ 30.) In his response, Reed explained that he did not remember the origin of the Album Artwork. (*Id.*) He also told Pendleton that, in 2018, the mixtape, with the Album Artwork as the cover, was leaked by someone close to him. (*Id.*) Reed explained that, rather than fight the leak, he and his team decided to allow the mixtape to circulate commercially. (*Id.*) On September 4, 2020, Pendleton replied to Reed's email with one of her own, proposing a financial settlement to resolve the dispute. (*Id.* ¶ 31.) Reed did not respond to that email or a follow-up email sent on September 11, 2020. (*Id.* ¶ 32.)

Not hearing anything back from Reed, Pendleton acquired counsel, who then reached out to the Record Label on her behalf on December 14, 2020. (*Id.* ¶ 33.) In doing so, Pendleton demanded that the Record Label, which was responsible for commercially distributing the mixtape, compensate her for Defendants' unauthorized use of the Album Artwork. (*Id.*) Over the next few weeks, Pendleton and the Record Label, through counsel, went back and forth regarding whether the Record Label ever had permission to use the Album Artwork. (*Id.* ¶¶ 34–37.) The Record Label eventually confirmed that Reed had explicitly requested the Album Artwork from Pendleton for use as an album cover, and that she had never been compensated for her creation. (*Id.* ¶ 37.) However, the Record Label also suggested that, because the mixtape did not earn significant revenue, the Record Label's reasonable efforts to remove the Album

Artwork from online platforms constituted an adequate remedy. (*Id.*) Still, the Album Artwork continues to be displayed on YouTube, among other websites where the mixtape is commercially available. (*Id.* ¶ 41.)

In July 2022, dissatisfied with the Record Label's response, Pendleton sued Defendants in the United States District Court for the Central District of California. (*Id.* ¶ 45.) The lawsuit in California ("California Action") was eventually dismissed by the district court for lack of personal jurisdiction. (*Id.* ¶ 47.) On May 17, 2023, Pendleton appealed the dismissal to the Ninth Circuit Court of Appeals. (*Id.* ¶ 48.) While that appeal was still pending, Pendleton filed her Complaint in this Court, based on the same claims and causes of action as in the California Action. The Complaint here contains five counts. Counts I and IV assert claims for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501. Count II alleges common law negligence by the Record Label. Finally, Counts III and V raise claims of common law unjust enrichment. In response, the Moving Defendants now move to dismiss the Complaint for failure to state a claim.[1] (Dkt. No. 31.)

## DISCUSSION

Under federal notice pleading standards, a "plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard

---

[1] Defendant 10Q has not appeared in this case and the Court has entered default against it. (Dkt. No. 18.)

does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550

U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting

*Iqbal*, 556 U.S. at 678).

Moving Defendants make three arguments for dismissal. First, they argue that the

doctrine of *res judicata* applies to bar Pendleton's claims. Second, they argue that Pendleton has

failed to plead a case for copyright infringement sufficiently because her Complaint does not

explicitly allege that she owns a registered copyright covering the Album Artwork. Third, they

contend that all Pendleton's state law claims are preempted by the federal Copyright Act. The

Court addresses each argument in turn and concludes that Pendleton's federal copyright claims

survive, while her state law claims must be dismissed.

## I.  *Res Judicata*

Moving Defendants raise the affirmative defense of *res judicata*. "The proper way to seek

a dismissal based on an affirmative defense under most circumstances is not to move to dismiss

under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then

move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964–65

(7th Cir. 2020). However, the Seventh Circuit has also "carved out a narrow and pragmatic

exception if the availability of a defense is apparent in the plaintiff's complaint itself. Because

public records from previous litigation may be considered in a motion to dismiss, it is sometimes

possible to resolve a *res judicata* defense on a Rule 12(b)(6) motion." *Id.* at 965 (citations

omitted). Here, the combination of the Complaint and the records from the California Action

makes resolving the *res judicata* issue at this stage quite straightforward.

"*Res judicata* blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015). Moving Defendants argue that, because the California Action was dismissed*, res judicata* blocks this lawsuit.

It is readily apparent, and the parties agree, that the California Action and this case both involve the exact same parties and causes of action. *See Martin v. Akerson*, No. 08 C 3812, 2009 WL 2848897, at *3 (N.D. Ill. Aug. 31, 2009) ("For the purposes of *res judicata*, causes of action are identical when they arise from the same core of operative facts."). As a result, the parties' only dispute is whether there was a final judgment on the merits in the California Action—the final element necessary to assert *res judicata*. The district court in California dismissed the California Action for lack of personal jurisdiction. *Pendleton v. 10Q LLC*, No. 22-cv-04806, 2023 WL 9420515, at *2 (C.D. Cal. Jan. 20, 2023). However, under the Federal Rules of Civil Procedure, a dismissal for lack of personal jurisdiction is not a final judgment on the merits. *See* Fed. R. Civ. P. 41(b). Indeed, the Moving Defendants do not attempt to argue that the district court's dismissal was on the merits. Rather, they direct this Court's attention to the Ninth Circuit's handling of Pendleton's appeal.

Eight months after Pendleton filed the present Complaint, the Ninth Circuit dismissed Pendleton's appeal for failure to prosecute.[2] Order, *Pendleton v. 10Q LLC*, No. 23-55468 (9th Cir. Mar. 15, 2024). Unlike a dismissal for lack of jurisdiction, a "dismissal for failure to prosecute operates as an adjudication on the merits" under Federal Rule of Civil Procedure

---

[2] An earlier order from this Court stated that Pendleton had voluntarily dismissed her appeal in the Ninth Circuit. (Dkt. No. 46.) Based on a review of the record before the Court at the motion to dismiss stage, which shows that the appeal was dismissed for failure to prosecute, the statement in the Court's prior order appears to have been made in error.

41(b). *Barr*, 796 F.3d at 838 (internal quotation marks omitted). Accordingly, Moving

Defendants argue that all three elements necessary for *res judicata* exist, thus barring

Pendleton's Complaint. But while it is true that a dismissal for failure to prosecute is generally

treated as a final judgment on the merits, the rule is typically only implicated by a failure to

prosecute in the district court, not on appeal. *See, e.g.*, *Barr*, 796 F.3d at 838 (district court

dismissal triggered *res judicata*); *Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006)

(same). This case presents a different posture.

The Ninth Circuit's dismissal for failure to prosecute followed the district court's

dismissal for lack of personal jurisdiction. Pendleton's appeal only challenged the district court's

determination that it did not have personal jurisdiction over Defendants. And by dismissing the

appeal, the Ninth Circuit never ruled one way or the other on that determination. As a

consequence of the dismissal, Pendleton lost the ability to raise a future appeal before the Ninth

Circuit challenging the district court's jurisdictional holding. *See Semtek Int'l Inc. v. Lockheed

Martin Corp.*, 531 U.S. 497, 506 (2001) (holding "that the effect of the 'adjudication upon the

merits' default provision of Rule 41(b) . . . is simply that, unlike a dismissal 'without prejudice,'

the dismissal in the present case barred refiling of the same claim [in the same court]"). She did

not, however, lose the ability to refile her underlying substantive claims in another court of

competent jurisdiction.

Moreover, the Ninth Circuit does not automatically consider a dismissal pursuant to the

local rule it applied to Pendleton's appeal to be a final judgment on the merits. Pendleton's

appeal was dismissed because she failed to file her opening brief by the due date. In its order, the

Ninth Circuit cited a Ninth Circuit rule that allows "an order [to] be entered by the clerk

dismissing the appeal" "[w]hen an appellant fails to . . . file a timely brief." 9th Cir. R. 42-1. That

is what happened here. The Clerk of Court for the Ninth Circuit entered a routine order dismissing the case. The Ninth Circuit recently described a similar dismissal under the same rule, also based on an appellant's failure to file a timely opening brief, as a "termination" that "rested on procedural default and did not reach the merits of [the appellant's case]." *Li v. Bondi*, 139 F.4th 1113, 1125 (9th Cir. 2025). In *Li*, the Ninth Circuit determined that consideration of the appellant's more recent claim "would not re-litigate the merits of" the original case, "because [the Ninth Circuit] never addressed or adjudicated the merits of [the appellant's] claims." *Id.*

Given the procedural posture of the California Action's dismissal, the Court finds that *res judicata* does not apply to Pendleton's claims against the Moving Defendants in this case.[3] That the Ninth Circuit's dismissal was the result of Pendleton's failure to prosecute her appeal does not transform the district court's earlier dismissal, which was necessarily without prejudice, into a final judgment on the merits. It was not. Accordingly, it does not bar Pendleton from refiling her case in this District.

### II.      Copyright Allegations

Moving Defendants next argue that Pendleton's Complaint is deficient because it fails to allege that she holds a valid copyright for the Album Artwork. Proving copyright infringement "requires proof of '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The second element is not at

---

[3] *Res judicata* does not apply with respect to the Moving Defendants. However, the Court notes that Defendant 10Q may be differentially situated because it seems to have prevailed on a Rule 12(b)(6) motion in the California Action. *Pendleton v. 10Q LLC*, No. 22-CV-04806, 2023 WL 9421797, at *1 (C.D. Cal. Jan. 20, 2023). As noted above, the Court previously entered default against 10Q and it is not a party to the present motion. Thus, the Court will address 10Q's situation by separate order.

issue here: the parties do not dispute that the Complaint sufficiently alleges that Defendants used the Album Artwork without permission. *See Carter v. Pallante*, 256 F. Supp. 3d 791, 798 (N.D. Ill. 2017) (noting that "copying" "refers more broadly to infringing upon any one of a copyright owner's exclusive rights as listed in the Copyright Act"). Instead, Moving Defendants point out that the Complaint lacks a specific allegation that a copyright for the Album Artwork has been registered with the United States Copyright Office. Along similar lines, they argue that, even if a copyright registration exists, Pendleton has not alleged that she is the owner of the registered copyright.

Moving Defendants are correct that registration of the copyright is a prerequisite to pursuing an infringement claim under federal law. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019); 17 U.S.C. § 411(a). They are also correct that an adequately pleaded infringement claim must allege that the plaintiff holds the registered copyright. *Lawrence v. Trax Recs., Inc.*, No. 22 C 5660, 2025 WL 919616, at *6 (N.D. Ill. Mar. 26, 2025). And, contrary to Pendleton's assertions, the Complaint does not provide detailed factual allegations showing ownership of a valid copyright. Nowhere in the Complaint does Pendleton assert that the copyright is registered or that she owns the registered copyright. Nor does the Complaint include a copyright registration number or include a copy of a registration certificate as an exhibit.

Still, Moving Defendants' argument cannot prevail. The purpose of a complaint is simply to "provide the defendant with fair notice of the [plaintiff's] claim and its basis," not to require detailed factual allegations. *Tamayo*, 526 F.3d at 1081 (internal quotation marks omitted). To that end, when considering a Rule 12(b)(6) motion, courts "construe the complaint in the light most favorable to the plaintiff . . . and draw[] all possible inferences in her favor." *Id.* Here, it is

not difficult to draw the reasonable inference that Pendleton owns a registered copyright for the Album Artwork. (*See* Compl. ¶¶ 44, 69 (using the possessive, "Ms. Pendleton's copyrights," and describing Pendleton as "the creator and owner of the [Album] Artwork").) But the Court need not rely solely on such an inference.

"Certificates of Registration from the U.S. Copyright Office are public records that the court may take judicial notice of without converting a Rule 12(b)(6) motion to a motion for summary judgment." *Blue Book Servs., Inc. v. Farm J., Inc.*, 435 F. Supp. 3d 912, 916 (N.D. Ill. 2020) (internal quotation marks omitted). The Court may take judicial notice of a copyright registration, even if it is not attached to the Complaint, because it is a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. In other words, it "is not subject to reasonable dispute." *Id.*

Moving Defendants cite a case discussing pleading requirements for invoking federal-question jurisdiction for the proposition that judicial notice cannot overcome pleading deficiencies. *See Bankers' Mut. Cas. Co. v. Minneapolis, St. Paul, & Sault Sainte Marie Ry. Co.*, 192 U.S. 371, 383 (1904) ("[T]he averments of the complaint cannot be helped out by resort to the other pleadings or to judicial knowledge."). That proposition is incorrect in this context. Not only does that proposition rely on a single line in an opinion on a different legal issue, but the cited case also predates the Federal Rules of Evidence by almost 70 years. More recent cases are clear that courts may take judicial notice of copyright registration. *Blue Book Servs., Inc.*, 435 F. Supp. 3d at 916.

Although not attached to her Complaint, Pendleton has already filed a Certificate of Registration for the Album Artwork with the Court. (Certificate of Registration, Dkt. No. 4-1.) The Certificate shows her ownership of the copyright and that the registration became effective

January 3, 2021. (*Id.* at 1.) But even without Pendleton's filing, the Court could take judicial notice of Pendleton's ownership of the registered copyright because the registration certificate is a public record. *Blue Book Servs., Inc.*, 435 F. Supp. 3d at 916. The Court therefore takes judicial notice of Pendleton's ownership of a valid copyright for the Album Artwork. Pendleton's allegations that Defendants used the Album Artwork, which she created, without authorization are also more than adequate. Accordingly, the Complaint sufficiently alleges the elements of copyright infringement. *See Peters*, 692 F.3d at 632 (providing the two elements).

### III. State Law Claims

Finally, Moving Defendants argue that Pendleton's state law claims for negligence and unjust enrichment should be dismissed because they are preempted by the Copyright Act. They also point out that, because Pendleton did not respond to their preemption arguments, she has waived the issue. Moving Defendants are correct on both points.

The Court begins with the waiver argument. The Seventh Circuit has "repeatedly held that a party waives an argument by failing to make it before the district court." *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) (collecting cases). "That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate." *Id.* In our adversarial system, so long as one party presents a plausible reason for dismissing a complaint, it is not the Court's role to "do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Id.* (internal quotation marks omitted).

Here, Moving Defendants put forward a plausible argument to dismiss the state law claims. In response, Pendleton restates the elements of her two state law claims and reasserts that her factual allegations satisfy those elements. She does not, however, make any attempt to

respond to the argument that her negligence and unjust enrichment claims are preempted by the Copyright Act. Her failure to respond waives any argument she might have made, which alone is sufficient grounds to dismiss the claims.

Nonetheless, the Court also briefly addresses the merits of the preemption argument.[4] Section 301(a) of the Copyright Act "preempts 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' and are 'in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.'" *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (quoting 17 U.S.C. § 301(a)). The Seventh Circuit has distilled two elements from the language of the statute: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986).

As the Album Artwork is covered by a valid, registered copyright, there is no dispute about the first element of the preemption analysis. With respect to the second element, "[a] state law right is considered 'equivalent' under the second prong if it is 'infringed by the mere act of reproduction, performance, distribution or display.'" *Carter*, 256 F. Supp. 3d at 802 (quoting *Balt. Orioles, Inc.*, 805 F.2d at 674). So, "to avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—i.e., conduct

---

[4] Like *res judicata*, the "Seventh Circuit has stated that preemption is an affirmative defense that a plaintiff generally need not anticipate in its pleadings, and that the proper mechanism for moving to dismiss on the basis of preemption is Rule 12(c)." *Carter*, 256 F. Supp. 3d at 802. But, as discussed above, "a Rule 12(b)(6) dismissal on the basis of an affirmative defense is proper when a complaint sets out everything necessary to establish the defense." *Id.* And "the Seventh Circuit has affirmed dismissals under Rule 12(b)(6) on the basis of preemption." *Id.*

other than reproduction, adaptation, publication, performance, and display." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005).

Here, the conduct alleged by Pendleton, which she asserts gives rise to claims of negligence and unjust enrichment, is plainly not distinguishable from the mere act of reproduction or distribution. She alleges that the Record Label breached a duty of care when it released the Album Artwork publicly without her authorization. However, duty of care or negligence claims are "preempted where the duty of care or negligence claims are based entirely on the underlying copyright infringement." *UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, No. 15-CV-9518, 2017 WL 3593117, at *6 (N.D. Ill. Aug. 21, 2017). Such is the case here. Pendleton's "negligence claim simply echoes" her copyright claims, "arguing in essence that the Defendants had a 'duty' to avoid infringing and that they 'breached' that duty by, in fact, infringing." *Id.* (some internal quotation marks omitted). Her "asserted state right is thus not qualitatively different than and is equivalent to [her] copyright claims, and accordingly, federal copyright law preempts" Pendleton's negligence claim. *Id.*

Similarly, Pendleton's unjust enrichment claims essentially restate her copyright claims. She asserts that Reed and the Record Label wrongfully used the Album Artwork without permission and unjustly retained the monetary benefits from the album's release. As with Pendleton's negligence claims, "it is readily apparent that such conduct is not qualitatively different from that proscribed by the Copyright Act." *Carter*, 256 F. Supp. 3d at 803 (concluding, based on the complaint alone, that a similar unjust enrichment claim is preempted).

Pendleton's negligence and unjust enrichment claims are therefore preempted by the Copyright Act and must be dismissed. However, as the Seventh Circuit has advised, Pendleton is

13

"entitled to try to cure the problem through an amended complaint." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561–62 (7th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss (Dkt. No. 31) is granted in part and denied in part. The motion is granted with respect to Counts II, III, and V. Those claims are dismissed without prejudice to Pendleton filing an amended complaint that attempts to remedy the deficiencies discussed herein, if she believes she can do so. The motion is denied with respect to Counts I and IV. Those claims may proceed as currently pleaded.

ENTERED:

Dated: March 23, 2026

Andrea R. Wood
United States District Judge

14