**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TAYLOR D. PENDLETON, an individual, | ) Case No.: 1:23-cv-04708 |
| Plaintiff, | ) FIRST AMENDED COMPLAINT FOR |
| vs. | ) 1. COPYRIGHT INFRINGEMENT |
| 10Q LLC, a California Limited Liability Company; PROPELR MUSIC, LLC, an Illinois Limited Liability Company; MARRIANI RECORDS, an Illinois corporation; ANTOINE REED p/k/a "Sir Michael Rocks," an individual; and DOES 1 through 100, inclusive | ) 2. NEGLIGENCE  ) 3. UNJUST ENRICHMENT |
| Defendants. | ) **DEMAND FOR JURY TRIAL** |

**<u>FIRST AMENDED COMPLAINT</u>**

NOW COMES Plaintiff, TAYLOR D. PENDLETON ("Ms. Pendleton" or "Plaintiff"), by and through the undersigned counsel and hereby files this First Amended Complaint and Demand for Jury Trial against Defendants, 10Q LLC ("10Q") PROPELR MUSIC, LLC, ("PROPELR"); MARRIANI RECORDS ("MARRIANI"); (10Q, PROPELR and MARRIANI, collectively, shall be referred to as, the "LABEL"); ANTOINE REED p/k/a "Sir Michael Rocks" ("REED") and DOES 1 through 100, inclusive, (all defendants collectively shall be referred to as, the "DEFENDANTS") and states as follows:

**<u>INTRODUCTION</u>**

1. This is a suit based upon violations of the United States Copyright Act (the "Act"), negligence, and/or alternatively claims for unjust enrichment. The Plaintiff has specifically pled to counts of: Copyright Infringement, Negligence, and/or additionally, or in the alternative, a claim for Unjust Enrichment. Plaintiff, however, may move to amend these counts should additional counts and/or claims against the DEFENDANTS be discovered.

2.    Plaintiff is seeking damages in an amount to be proved at trial in excess of Seventy-Five Thousand ($75,000.00), including an award of costs and attorney's fees.

## THE PARTIES, JURISDICTION, AND VENUE

3.    Plaintiff is an individual, and she was at all relevant times mentioned herein a citizen of the County of Lucas, Ohio.

4.    Defendant 10Q is a California limited liability company with its principal place of business in the State of California. At all relevant times herein, 10Q conducted business in the State of California as a music/record label and 10Q is owned and controlled by PROPELR.

5.    Defendant PROPELR is an Illinois limited liability company with its principal place of business in the State of Illinois. At all relevant times herein, PROPELR conducted business in the State of Illinois as a music/record label.  Furthermore, PROPELR has acknowledged that it is a citizen of the State of Illinois, which this Court may take judicial notice of.

6.    Defendant MARRIANI is an Illinois company with its principal place of business in the State of Illinois.  At all relevant times herein, MARRIANI conducted business in the State of Illinois as a music/record label. Furthermore, MARRIANA has acknowledged that it is a citizen of the State of Illinois, which this Court may take judicial notice of.

7.    Defendant REED is an individual, and he was at the relevant times mentioned herein a citizen of the County of Cook, Illinois.  REED is a prominent entertainer, singer and songwriter who is professionally known as "Sir Michael Rocks".

8.    The full extent of the facts linking the fictitiously designated Defendants with the cause(s) of actions herein is unknown to the PLAINTIFF.  Further the true names and capacities, whether individual, corporate, associate, plural or partnership, or otherwise, of Defendants, DOES 1 through 10, inclusive, are unknown to the PLAINTIFF.  The PLAINTIFF therefore sues Defendants by such fictitious names.  The

PLAINTIFF is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE is negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully responsible in some manner for the events and happenings hereinafter referred to, and negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully, proximately caused injuries and damages to the PLAINTIFF as hereinafter alleged.  The PLAINTIFF will ask leave of this Court to amend this Complaint to show said Defendants' names and capacities once the same have been ascertained.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because it arises under an Act of Congress, the United States Copyright Act.

10.     Venue is proper in this District pursuant to § 1391, in that each of the Defendants resides and/or conducts business in Cook County, Illinois, and a substantial part of the events giving rise to these claims occurred in Cook County, Illinois.

## GENERAL ALLEGATIONS

11.     On or around May 31, 2016, Ms. Pendleton, a free-lance artist, shared a copy of some of her artwork with REED on the social media application Twitter, with the hopes that REED would request to work with her in the future.

12.     REED expressed an interest in Ms. Pendleton's artwork and he exchanged his email address with Ms. Pendleton via Twitter in order to further his inquiries into Ms. Pendleton's artwork.

13.     On June 5, 2016, Ms. Pendleton contacted Reed through the email address that REED provided her, and she advised Reed that she was interested in working with him and she inquired into what it was that REED was interested in having her create.

14. On June 6, 2016, REED responded to Ms. Pendleton via his personal email, and he stated that he was interested in having Ms. Pendleton create custom artwork for his official Twitch[1] page, where he intended to release his, at-the-time, newest musical project.

15. On June 15, 2016, REED again contacted Ms. Pendleton via email and he stated that he had another idea: instead of having Ms. Pendleton create artwork for his Twitch page, REED advised that he wanted Ms. Pendleton to create the cover artwork for his mixtape that he intended to release (the "Artwork").

16. On June 15, 2016, Ms. Pendleton responded to REED's email and stated that she was interested in creating the Artwork for REED's mixtape. Ms. Pendleton asked REED for details and any ideas that REED had for the design of the Artwork.

17. On June 16, 2016, REED explained to Ms. Pendleton that the mixtape would be entitled "Funds and Access" (the "Album") and REED provided Ms. Pendleton with various ideas of his concept for the Artwork. REED's ideas/concept involved skeletons, a credit card and an ATM machine. REED explained to Ms. Pendleton that he wanted the style of the Artwork to resemble Ms. Pendleton's aesthetic and the semi-gruesome artistic style that he saw in her prior works.

18. REED attached an example of another piece of artwork that he had retained someone to make for him to this email and he advised Ms. Pendleton that the example he was showing her "didn't quite make the cut."

19. On June 16, 2016, Ms. Pendleton responded to REED's email with "doodle type thumbnails" of the Artwork that she drew based upon the description that was outlined by REED in his previous email.

---

[1] Twitch is a social media website/application where individuals can live stream themselves as they play computer and video games.

COMPLAINT FOR DAMAGES - 4

20.     REED responded to Ms. Pendleton's email on June 16, 2016, and he advised her that the thumbnails that she drew looked 'really good' and that he would look at them further to narrow down which one he wanted.

21.     REED once again emailed Ms. Pendleton on June 22, 2016, and he asked her to let him know if she had decided to add color to the Artwork samples that she had presented to him, and he also advised her of a spelling error that he discovered in her draft of the Artwork.

22.     On June 23, 2016, Ms. Pendleton responded to REED's June 22, 2016 email and she informed REED that she had attached new drafts of the Artwork to her email that had more detail and more color. Ms. Pendleton expressed to REED that these drafts of the Artwork were not intended to be the final draft, but they were merely intended to give REED an idea of the concept that she was creating so that REED could best decide the direction that he wanted to take.

23.     On June 23, 2016, REED responded to Ms. Pendleton's email by stating "Niiiice. These look good AF [(as fuck)]."

24.     Ms. Pendleton responded to REED's June 23, 2016 email later that same day and thanked him for the compliment. Ms. Pendleton stated that she would help REED narrow down his choices of the Artwork thar she had created.

25.     REED never responded to this last email that Ms. Pendleton sent on June 23, 2016.

26.     At no point during their communications did REED indicate that the Artwork was being created on a gratuitous or volunteer basis or that Ms. Pendleton should not expect compensation for her work. REED's actions, including but not limited to his specific solicitation, detailed conceptual direction, review of multiple drafts, and expressions of approval, gave rise that Ms. Pendleton would have a reasonable expectation that she would be compensated for the Artwork and it would be used commercially.

27.     On or around August 30, 2016, Ms. Pendleton unfollowed REED on all social media platforms.

28. On or around August 31, 2020, while Ms. Pendleton was listening to a playlist on the mobile phone application, Spotify, she saw the Artwork displayed as a thumbnail for a song on the Album.

29. On August 31, 2020, Ms. Pendleton emailed REED, and reminded him who she was and that she had just discovered that he had included the Artwork on the Album and that the Artwork that she created for him was featured on multiple music streaming platforms including Soundcloud, Youtube, and Amazon, etc. In this same email, Ms. Pendleton also expressed her desire to amicably resolve her claims concerning the unauthorized use of the Artwork by REED.

30. After REED failed to respond to Ms. Pendleton's August 31, 2020, email, Ms. Pendleton sent REED another email on September 3, 2020, to a different email address that she had acquired for REED.

31. On September 3, 2020, REED responded to Ms. Pendleton's September 3, 2020, email stating that he remembered who Ms. Pendleton was and he apologized for not responding to her sooner. In this response, REED admitted that he did not remember where the Artwork for the Album came from. REED further explained to Ms. Pendleton that in 2018, a person close to him surreptitiously accessed his social media and email accounts without his permission and leaked the Album in 2018, which included the Artwork on its cover. REED continued that rather than fight the "leak," he and his team decided to "roll with the punches," and let the Album circulate commercially. REED also admitted that he erred by not researching where the Artwork came from, and he asked Ms. Pendleton what she had in mind in order to resolve the issues associated with his unauthorized use of the Artwork. In doing so, REED acknowledged the existence of a directed commercial relationship in which Ms. Pendleton created the Artwork at his specific solicitation and direction.

32. Ms. Pendleton replied to REED's email on September 4, 2020, and she stated that she would be willing to resolve the issue with REED in exchange for $3,000.00, plus an additional sum that was related to the Artwork's contribution to the Album, its streams and publicity.

33.     On September 11, 2020, Ms. Pendleton again emailed REED in an attempt to follow up on her September 4, 2020 email since she never received a response from REED. REED, however, also failed to respond to this email as well.

34.     On December 14, 2020, Ms. Pendleton, by and through undersigned counsel, contacted the LABEL and notified the LABEL of both its, and its client's, unauthorized use of the Artwork, which was Ms. Pendleton's personal intellectual property.  In this correspondence, Ms. Pendleton demanded that the LABEL, which was responsible for commercially distributing the Album, and which also displayed the Artwork on its own social media site and website to promote the Album and REED, compensate her for both its and REED's unauthorized use of the Artwork.

35.     On January 3, 2021, Ms. Pendleton's copyright registration in the Artwork became effective. The United States Copyright Office issued Certificate of Registration No. VA 2-239-023 for the Artwork.

36.     Counsel for Ms. Pendleton and counsel for the LABEL spoke on the telephone on January 4, 2021, regarding Ms. Pendleton's claims pertaining to the Artwork.

37.     During this conversation, counsel for the LABEL indicated that at that time of the Album's release, the LABEL was under the impression that Ms. Pendleton had participated in a social media contest and that it was allegedly understood by Ms. Pendleton, REED, and the LABEL that Ms. Pendleton's compensation for the Artwork would be her receiving credit for the Artwork on social media.

38.     After this phone call, the LABEL was provided with copies of the email exchanges between REED and Ms. Pendleton in an effort to refute the LABEL's claims that the Artwork was created by Ms. Pendleton as a part of her participation in a social media contest and to further show the LABEL that Ms. Pendleton had never been compensated for the Artwork in any way.

39.     On January 19, 2021, the LABEL, through its counsel, responded to Ms. Pendleton's claims regarding compensation and confirmed that REED had explicitly requested that Ms. Pendleton provide

him with the Artwork that was to be used as the cover art for the Album, but advised that neither REED nor Ms. Pendleton had discussed any compensation or fee for the Artwork. The LABEL then proceeded to erroneously advise Ms. Pendleton that because the Album did not earn significant revenue, its efforts to take 'reasonable steps to remove' the Artwork were an adequate remedy. In so confirming, the LABEL acknowledged that the Artwork was the product of a specific commercial solicitation, that Ms. Pendleton had created the Artwork in the context of a directed business relationship, and that Ms. Pendleton had never been compensated or acknowledged for her work in any way despite the Artwork's commercial exploitation across multiple platforms.

40. Despite knowing that REED did not purchase the Artwork or have any authorization from Ms. Pendleton to use the Artwork, REED and the LABEL knowingly, intentionally, and in bad faith commercially released the Album, and the release of the Album generated publicity and income for both REED and the LABEL.

41. While REED claims that the Album was first released without his permission, REED knew that he did not have Ms. Pendleton's permission to use the Artwork on the Album, and REED failed to take any curative measures or to direct the LABEL to take any curative action concerning the unauthorized use of the Artwork once such unauthorized use was discovered by REED.

42. Both REED and the LABEL's use of the Artwork is, and was, unauthorized and in bad faith.

43. Despite the fact that Ms. Pendleton gave notice of her claims concerning the Artwork to REED and the LABEL, the Artwork was still displayed on the LABEL's website, for several months after the LABEL had notice that the use of the Artwork was unauthorized, and the Artwork also continued to be displayed on YouTube, and several other websites where the Album was, and is, commercially available, until this day.

44.     As a direct result of the DEFENDANTS' infringing actions, Ms. Pendleton has suffered and she will continue to suffer, monetary losses and other damages.  Ms. Pendleton is therefore entitled to recover from the LABEL, in an amount to be determined at trial, the damages she has sustained and will continue to sustain as a direct result of the DEFENDANTS' infringing actions, along with any gains, profits and/or advantages that have been obtained by the DEFENDANTS. In addition, Ms. Pendleton also suffered harm distinct from the infringement itself, including the loss of professional credit and recognition for the Artwork, the loss of the ability to negotiate compensation for its use, and the loss of future commissions and commercial opportunities that would have resulted from proper attribution as the creator of the Artwork.

45.     The LABEL knew, or reasonably should have known, that REED did not have any authority to commercially release the Album with the Artwork on its cover. As a commercial music distributor operating in the music industry, the LABEL had an independent professional duty, to conduct reasonable due diligence to verify the ownership and provenance of all creative works it commercially exploited. The LABEL breached that duty by failing to exercise due care to verify the ownership of the Artwork prior to the Album's commercial release, depriving Ms. Pendleton of her ability to negotiate compensation, receive professional credit, and control the commercial exploitation of her work.

46.     On information and belief, both REED and the LABEL, who worked in conjunction with each other, received thousands of dollars due to their exploitation and unauthorized use of the Artwork through the direct sale, downloads, licensing, synchronization and/or digital streaming of the Album. REED and the LABEL also obtained significant income from the Artwork indirectly based upon the publicity that REED and the LABEL received from the Album's release which prominently featured the Artwork, and which was in violation of Ms. Pendleton's copyrights.

47.     On July 13, 2022, Ms. Pendleton filed a timely action in the United States District Court for the Central District of California (the "Central District"), which was based upon the same claims and causes of action in this Complaint; however, in the Complaint before the Central District, Ms. Pendleton alleged that each of the DEFENDANTS had substantial minimum contacts with the State of California warranting the Central District's jurisdiction.

48.     The case in the Central District was given the following case number: 2:22-cv-04806-RGK-PVC (the "California Action").

49.     On December 23, 2022, PROPELR, MARRIANI, and REED filed a Motion to Dismiss for Lack of Jurisdiction in the California Action, which was granted by the Central District on January 20, 2023.

50.     After seeking relief through post-order motions, which were denied, Ms. Pendleton filed an appeal of the Central District's order dismissing the California Action to the Ninth Circuit Court of Appeals on May 17, 2023.

51.     Ms. Pendleton reasonably believed that PROPELR, MARRIANI, and REED were *citizens* of the State of California based upon their business dealings and contacts with and in the State of California.

52.     The doctrine of equitable tolling therefore applies here and supports the continuation of this action in this Court.

53.     In having this matter heard by this Court, there is no prejudice to the DEFENDANTS. Prior to the dismissal of the California Action, the parties had not yet initiated discovery, and the case was in its early stages.

54.     The only party that will be prejudiced if the doctrine of equitable tolling is not applied here will be Ms. Pendleton.

55.     Ms. Pendleton's belief that the Central District could exercise jurisdiction over PROPELR, MARRIANI, and REED was reasonable and in good faith, especially in light of the fact that it is without

dispute that the infringing work, the Artwork, was not only sold in California, but specifically marketed and promoted commercially in California by PROPELR, MARRIANI, and REED as well.

56.     Ms. Pendleton was not looking to forum shop when she filed in the Central District, and she did not file the California Action in order to cause any needless or undue harm or delay, but rather because Ms. Pendleton believed that PROPELR, MARRIANI, and REED had sufficient minimum contacts to warrant the Central District's jurisdiction over her claims.

57.     Because the DEFENDANTS have received timely notice of Ms. Pendleton's claims in this action, there is not any prejudice to the DEFENDANTS, and Ms. Pendleton's actions, which were reasonable and done in good faith, warrant the application of the doctrine of equitable tolling in this instant action.

58.     All conditions precedent to the bringing and maintenance of this action and the granting of the relief requested have been performed, have occurred, or have been waived.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
(by the PLAINTIFF against the LABEL)

59.     PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

60.     On information and belief, the LABEL received authorization and permission from REED to commercially release the Album on or around September 21, 2018.

61.     The LABEL has unlawfully used the Artwork and it has never sought Ms. Pendleton's consent, permission or approval to use the Artwork notwithstanding the fact that the LABEL had knowledge that its use of the Artwork was unauthorized and that it lacked Ms. Pendleton's explicit and/or implicit consent to use the Artwork.

62.     The LABEL, with the assistance of REED, infringed upon Ms. Pendleton's rights under the Act by marketing, licensing and/or otherwise exploiting the Artwork in direct violation of Ms. Pendleton's rights under the Act.

63. Upon information and belief, the LABEL has received substantial sums of money as a direct result of its infringing use of the Artwork and it has paid, or caused others to pay it, REED, and others, substantial sums of money that are associated with its infringing use of the Artwork.

64. The LABEL, with the assistance of REED, has violated Ms. Pendleton's right to control, sell, market, and/or distribute the Artwork and/or any derivative works of/from the Artwork in direct violation of Ms. Pendleton's rights under the Act.

65. Given the commercial success of the Album, the LABEL has realized unjust profits, gains and advantages as a proximate result of its infringement, and it will continue realizing such unjust profits, gains and advantages as a proximate result of its infringement, as long as such infringement is permitted to continue.

66. As a direct and proximate result of the DEFENDANTS' willful copyright infringement, Ms. Pendleton has suffered and she will continue to suffer, monetary losses and other injuries. Ms. Pendleton is entitled to recover from LABEL, in an amount to be determined at trial, the damages that she has sustained and will sustain, and any gains, profits and/or advantages obtained by the LABEL as a result of its infringing acts and its use and publication of the Artwork on the Album.

67. Ms. Pendleton is entitled to recover damages from the LABEL, which include, but are not limited to her attorneys' fees, the costs of this action, and any gains, profits and/or advantages that have been obtained by the LABEL as a result of its actions as alleged in this Complaint.

68. At the present time, the amount of Ms. Pendleton's damages, and the amount of the gains, profits and/or advantages received by the LABEL cannot be fully ascertained; however, such will be established according to proof at trial.

**COUNT II**
**NEGLIGENCE**
(by the PLAINTIFF against LABEL)

COMPLAINT FOR DAMAGES - 12

69.     PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

70.     The LABEL, as a commercial music distributor operating in the music industry, had a professional duty to conduct reasonable due diligence to verify the ownership and provenance of all creative works it commercially exploited before releasing the Album on or around September 21, 2018.

71.     The LABEL breached this duty when it commercially released the Album featuring the Artwork without conducting any inquiry into the ownership of the Artwork, without seeking to identify or contact the creator of the Artwork, and without taking any steps to verify that REED had obtained the rights necessary to authorize the commercial use of the Artwork.

72.     As a direct result of the LABEL's breach of its professional duty, Ms. Pendleton suffered harm, including the loss of her ability to negotiate compensation for the use of the Artwork, the loss of professional credit and recognition as the creator of the Artwork, and the loss of future commissions and commercial opportunities that would have resulted from proper attribution.

73.     As a direct result of the LABEL's breach of its professional duty, Ms. Pendleton has sustained damages of a pecuniary nature, in an amount to be determined with proof at trial. Had the LABEL conducted reasonable due diligence prior to the commercial release of the Album, Ms. Pendleton would have had the opportunity to negotiate compensation for the use of the Artwork, receive professional credit as its creator, and benefit from the commercial exposure that would have resulted from the Album's widespread distribution across multiple streaming platforms.

**COUNT III**
**UNJUST ENRICHMENT**
(by the PLAINTIFF against LABEL)

74.     PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

75.     Prior to September 21, 2018, the LABEL, on information and belief, received authorization from REED to release the Album on or around September 21, 2018.

76.     On or around September 21, 2018, the LABEL released the Album for commercial purposes, which featured the Artwork on its cover.

77.     The Artwork was created by Ms. Pendleton, and it was used as the Album's cover art.  The Album was commercially available across multiple streaming platforms, including but not limited to, Amazon Music, Spotify, Tidal, Apple Music, Pandora, and YouTube.  The Artwork was also used to promote the Album on REED's personal social media pages as well as on the LABEL's website.

78.     Neither the LABEL nor REED ever requested Ms. Pendleton's permission to use the Artwork on the Album.

79.     The Artwork was not voluntarily or gratuitously provided to the LABEL or to REED. The Artwork was created by Ms. Pendleton pursuant to a specific solicitation by REED, who directed its creation through multiple communications, provided detailed conceptual guidance, reviewed draft versions, and accepted the Artwork under circumstances from which a reasonable expectation of compensation would arise. The Artwork was not commissioned or paid for by the LABEL. The LABEL commercially exploited the Artwork, knowing that it had not compensated anyone for the creation of the Album's cover art, and without verifying the ownership or provenance of the Artwork prior to its commercial release.

80.     The LABEL has received monies due to the commercial release of the Album, which Ms. Pendleton is, at least in part, responsible for its creation, and therefore Ms. Pendleton is entitled to a portion of the monies that were earned and received by the LABEL due to its commercial release of the Album.

81.     Through its use of the Artwork, Ms. Pendleton conferred a benefit on the LABEL, who benefitted monetarily from the sales and streams of the Album.

82.     The LABEL was, and is, aware of the benefit that it received from Ms. Pendleton through the Artwork that was used as the Album's cover art.

83.     The LABEL intended to receive, and it ultimately did/has received tremendous financial gain and compensation through the commercial release of the Album.

84.     Notwithstanding the financial gain and compensation that the LABEL has received through its commercial release of the Album, Ms. Pendleton has not received any financial gain, compensation, or professional recognition whatsoever, despite the fact that the Artwork was specifically created for REED at REED's solicitation and direction and was never paid for by the LABEL or anyone acting on its behalf.

85.     The circumstances are such that it would be inequitable for the LABEL to retain the benefits that were conferred on it by Ms. Pendleton, without providing any benefits or compensation to Ms. Pendleton. The LABEL's retention of these benefits is inequitable not merely because it used the Artwork without authorization, but because it knowingly exploited a work it never paid for, depriving Ms. Pendleton of the just compensation, credit, and commercial opportunity she reasonably expected from the work she created.

**COUNT IV**
**COPYRIGHT INFRINGEMENT**
(by the PLAINTIFF against REED)

86.     PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

87.     As described above, REED has infringed, and continues to infringe, upon Ms. Pendleton's rights and interest to, and in, the Artwork in violation of her exclusive rights under 17 U.S.C. § 101 et seq. by commercially releasing the Album with the Artwork on its cover despite not having received permission or a license to feature the Artwork on the Album, or on any streaming platform, from Ms. Pendleton.

COMPLAINT FOR DAMAGES - 15

88.     REED's actions and responses, or lack thereof, to Ms. Pendleton's good faith attempts to advise REED of his infringing use of the Artwork demonstrate that REED's infringement of the Artwork was deliberate, willful, and in disregard of Ms. Pendleton's rights under the Act.

89.     Given the commercial success of the Album, REED has realized unjust profits, gains and/or advantages as a proximate result of his unauthorized use of the Artwork, and he will continue realizing such unjust profits, gains and/or advantages as a proximate result of his unauthorized use, as long as such use is permitted to continue.

90.     As a direct and proximate result of REED'S willful copyright infringement, Ms. Pendleton has suffered and she will continue to suffer, monetary losses and damages. Ms. Pendleton is therefore entitled to recover from REED, in an amount to be determined at trial, the damages she has sustained and will continue to sustain, along with any gains, profits and/or advantages that were obtained by REED as a result of his unauthorized use and/or publication of the Artwork that was created by Ms. Pendleton.

91.     Ms. Pendleton is entitled to recover damages from REED, which include, but are not limited to her attorneys' fees, the costs of this action, and any gains, profits and/or advantages that have been obtained by REED as a result of his actions as alleged above.

92.     At the present time, the amount of Ms. Pendleton's damages, and/or the gains, profits and/or advantages realized by REED cannot be fully ascertained; however, such will be established according to proof at trial.

### COUNT V
### UNJUST ENRICHMENT
(by the PLAINTIFF against REED)

93.     PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

COMPLAINT FOR DAMAGES - 16

94. On or around September 21, 2018, REED authorized the LABEL to commercially release the Album, which featured the Artwork on its cover.

95. The Artwork was created by Ms. Pendleton specifically at REED's solicitation and direction. REED initiated the commercial relationship between himself and Ms. Pendleton, provided detailed conceptual guidance, reviewed multiple drafts, expressed approval of the work, and accepted the Artwork under circumstances from which a reasonable expectation of compensation on the part of Ms. Pendleton would arise. REED disappeared even after multiple attempts by Ms. Pendleton to communicate, never compensating Ms. Pendleton for the Artwork despite having solicited and directed its creation.

96. REED was, and is aware of, and had knowledge of, the benefit that he received from Ms. Pendleton through the Artwork when he released the Album.

97. REED intended to receive, and ultimately did/has received financial gain and compensation due to the commercial release of the Album.

98. Notwithstanding the financial gain and compensation that REED has received through his commercial exploitation of the Artwork, Ms. Pendleton has not received any financial gain, compensation, or professional recognition as a result of the commercial release of the Album. REED knew that he had solicited and directed the creation of the Artwork, that he had not paid Ms. Pendleton or anyone for the Artwork, and that he did not create the Artwork himself. Despite this knowledge, REED chose to commercially exploit the Artwork and retain all financial benefits derived therefrom, without making any attempt to compensate Ms. Pendleton or acknowledge her as its creator.

99. When Ms. Pendleton discovered the unauthorized use of her Artwork in August 2020 and contacted REED directly, REED acknowledged the situation, admitted he had not researched the origin of the Artwork, and then disappeared again without taking any curative action, continuing to use the Artwork. REED's repeated failure to respond, despite having actual knowledge that he had used Ms.

Pendleton's work without compensation, forced Ms. Pendleton to retain legal counsel and ultimately file this action. REED had every opportunity to compensate and acknowledge Ms. Pendleton and chose not to.

100.     The Artwork on the Album directly and/or indirectly contributed to the commercial success of the Album.

101.     It would be fundamentally inequitable to permit REED to retain the financial benefits derived from the Artwork while Ms. Pendleton, who created the work at his specific solicitation and direction, has received nothing in return.

**WHEREFORE**, for the reasons set forth herein, PLAINTIFF respectfully requests that this Court award damages in her favor and against the DEFENDANTS and each of them as follows:

a.  For general and special damages to be proven at trial in an amount in excess of seventy-five thousand dollars ($75,000.00) dollars;

b.  For an injunction, declaration, or other mandate that provides for Plaintiff to be properly credited as the artist of the Album's cover art, the Artwork;

c.  For an injunction, declaration, or other mandate that provides for the DEFENDANTS to direct any and all third parties whom they control to properly credit Plaintiff as the artist/creator of the Album's cover art, the Artwork;

d.  For a full and proper accounting of any and all monies earned from the Album;

e.  For any respective plaque(s) and any other credit/ancillary benefit that Plaintiff is entitled;

f.  For the costs of this action;

g.  For attorney's fees;

h.  For interest; and

i.  For any other and further legal and equitable relief this Court deems just and proper.

DATED 27th day of April 2026

**THE LAW OFFICE OF KRISTINA T. WILSON, P.C.**

/s Kristina T. Wilson, Esq.
Kristina T. Wilson, Esq.
*Attorney for Plaintiff*
18723 Via Princessa
Unit # 1098
Santa Clarita, California 91387
Telephone: (323) 537-7795
CA Bar No. 330475
Email: Wilson@KTWilsonLaw.com
Secondary Email: KTWilsonLaw@gmail.com
**Attorneys for Plaintiff, Taylor D. Pendleton**

## DEMAND FOR JURY TRIAL

Plaintiff TAYLOR D. PENDLETON, hereby demand a trial by jury for all issues so triable.

DATED this 27th day of April 2026.

**THE LAW OFFICE OF KRISTINA T. WILSON, P.C.**

/s Kristina T. Wilson, Esq.
Kristina T. Wilson, Esq.

COMPLAINT FOR DAMAGES - 19

## **RESERVATION OF RIGHTS**

Plaintiff TAYLOR D. PENDLETON reserves the right to further amend this Complaint, upon completion of her investigation and discovery, to assert any additional claims for relief against the DEFENDANTS or any other parties as may be warranted under the circumstances and as allowed by law. Plaintiff TAYLOR D. PENDLETON further reserves the right to seek and to have punitive damages assessed against the DEFENDANTS.

DATED this 27th day of April 2026.

**THE LAW OFFICE OF KRISTINA T. WILSON, P.C.**

/s Kristina T. Wilson, Esq.
Kristina T. Wilson, Esq.

COMPLAINT FOR DAMAGES - 20